**James M. POLANSKY, to his own use and to the use of the State Accident Fund, Plaintiff,**

v.

**RYOBI AMERICA CORPORATION, Defendant.**

**Civ. A. No. R–89–3421.**

United States District Court, D. Maryland.

March 28, 1991.

Gary I. Strausberg, Wayne M. Willoughby, Janet & Strausberg, Baltimore, Md., for plaintiff.

Michael L. Cohen, Richard T. Schwartz, Wilson, Elser, Moskowitz, Edelman & Dicker, Baltimore, Md., for defendant.

MEMORANDUM AND ORDER

RAMSEY, District Judge.

Pending before the Court in the above-captioned case is plaintiffs' ("Polansky") motion for reconsideration of its order granting defendant's ("Ryobi") motion *in limine.* Pursuant to Local Rule 105 subd. 6 (D.Md.1989), the Court will decide defendant's motion without a hearing. For the reasons set forth below, the motion for reconsideration will be granted.

On or about March 1, 1987, Plaintiff, James M. Polansky ("Polansky") allegedly incurred injuries to his left hand while performing carpentry work with a Model TS–251U miter saw allegedly distributed by Ryobi. Polansky alleges negligence, breach of warranty, strict liability, and failure to warn by Ryobi.

In defendant's motion *in limine*, defendant alleged that plaintiff may attempt to introduce evidence regarding modifications to the design of the Model TS–251U Ryobi miter saw that occurred subsequent to plaintiff's alleged injury. Based on Fed.R. Evid. 407 that precludes the admissibility of subsequent remedial measures, defendant moved the Court to preclude the introduction of such evidence.[1]

Based on the Fourth Circuit's holding in *Werner v. Upjohn Co.*, 628 F.2d 848 (4th Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981), the Court held that evidence of subsequent remedial measures was inadmissible in this case with respect to Polansky's claims based either on theories of negligence and strict liability. *Id.* at 856–57.

■ In 1989, Ryobi began to market a ten inch miter saw that incorporated a dual activation switch ("dual activation switch saw") that plaintiffs contend would have prevented Polansky's injuries. On first impression, the introduction of the dual activation switch saw seemingly is precluded under Fed.R.Evid. 407. Subsequent to the Court's order, however, plaintiffs informed the Court that although Ryobi began marketing the dual activation switch saw in 1989, Ryobi continued to market the same model saw that allegedly caused Polansky's injuries without a dual activation switch.

Fed.R.Evid. 407 is designed to further the important public "policy of encouraging defendants to repair and improve their products without the fear that such actions

will be used later against them in a lawsuit." *Werner*, 628 F.2d at 855. Because Ryobi continues to market the saw that fails to contain a dual activation switch, the alleged defect in the saw that allegedly caused Polansky's injuries has not been remedied. Rather than having remedied the alleged defect in the saw, Ryobi merely markets a distinctly new model saw that does not contain the alleged defect. Because Ryobi has not furthered the public policy of repairing or improving its product, it is not entitled to the protection generally afforded those taking subsequent remedial measures. Accordingly, evidence of the saw containing the dual activation switch shall not be precluded based on Fed. R.Evid. 407.

■ Defendant maintains that even if the introduction of the dual activation switch saw is not precluded by Fed.R.Evid. 407, the introduction of such evidence must be barred under Fed.R.Evid. 403 that provides:

> Although relevant, evidence may be excluded if its probative value is *substantially* outweighed by the danger of *unfair* prejudice ...

(emphasis added).

In the instant case, the defendant has conceded that the dual activation switch was "technically feasible" at the time of Polansky's injury. Nevertheless, defendant has not stipulated that the modification could have been made without making the product too expensive to maintain its utility and be accepted by the public.

Plaintiffs maintain that the fact that Ryobi decided to market a saw with a dual activation switch indicated that Ryobi had determined that such saw would be accepted by the public, and therefore is highly probative on the issues of cost feasibility and potential consumer acceptance.

---

1. Fed.R.Evid. 407 governs the admissibility of evidence of subsequent remedial measures, and it states:

   When, after an event, measures are taken which, if taken previously would have made the event less likely to occur, evidence of the subsequent remedial measures is not admissi-

ble to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose such as proving ownership, control, or feasibility of precautionary measures, if controverted or impeachment.

Ryobi maintains that the probative value, if any, provided by evidence of the dual activation switch saw is substantially outweighed by the undue prejudice resulting from its admission. In support of its argument, Ryobi claims that the probative value would have no relevance with respect to plaintiffs' causes of action based on strict liability and breach of warranty.

In *Valk Mfg. Co. v. Rangaswamy*, 74 Md.App. 304, 537 A.2d 622 (1988), *rev'd on other grounds, Montgomery County v. Valk Mfg. Co.*, 317 Md. 185, 562 A.2d 1246 (1989), the Court of Special Appeals explained that there are three alternative theories under which a claimant may seek damages against the manufacturer of an alleged defective product: 1) negligence in tort; 2) strict liability for breach of warranty, express or implied; and 3) strict liability in tort. *Id.* 74 Md.App. at 310, 537 A.2d 622, *quoting* W. Keeton, *Prosser and Keeton on Torts* 694 (5th ed. 1984).

In order for plaintiffs to recover under a theory of strict liability in tort, they must show: 1) that the product was in a defective condition at the time it left the possession or control of the seller; 2) that the product was unreasonably dangerous to the user or consumer; 3) that the product was expected to and did reach the user or consumer without substantial change in its condition; and 4) that the defect was the cause of his injuries. *Kelley v. R.G. Industries, Inc.*, 304 Md. 124, 134–35, 497 A.2d 1143 (1985); *Phipps v. General Motors Corp.*, 278 Md. 337, 344, 363 A.2d 955 (1976); *see also* Restatement (Second) of Torts § 402A (1965).

A product may be defective for any one of three reasons within the contemplation of strict liability. First, there may be a flaw in the product at the time the defendant sold it making the product more dangerous than intended. Second, the producer of the product may fail to warn adequately of a risk or hazard relating to the way a product was designed. Last, a product may be defective in its design. *Simpson v. Standard Container Co.*, 72 Md.App. 199, 203, 527 A.2d 1337, *cert. denied*, 311 Md. 286, 533 A.2d 1308 (1987).

Under each theory, however, a plaintiff must show that the product was both in a defective condition and unreasonably dangerous. *C & K Lord, Inc. v. Carter*, 74 Md.App. 68, 87, 536 A.2d 699 (1988). *See Kelley v. R.G. Industries, Inc.*, 304 Md. at 134–35, 497 A.2d 1143; *Phipps v. General Motors Corp.*, 278 Md. at 344, 363 A.2d 955.

The elements of a negligence action and a strict liability action are the same "with the exception that in negligence plaintiff must show a breach of a duty of care by defendant while in strict liability plaintiff must show the product was unreasonably dangerous." *Werner*, 628 F.2d at 858. In failure to warn cases, under a negligence theory the issue is whether the defendant exercised due care in creating and updating the warning, and under a strict liability theory the issue is whether the lack of a warning made the product unreasonably dangerous. *Id.*

In determining whether a product is "unreasonably dangerous" under a theory of strict liability, one must weigh the utility of the risk inherent in the design against the magnitude of the risk. *Phipps*, 278 Md. at 345, 363 A.2d 955. The following considerations are relevant to the determination of whether a product is "unreasonably dangerous:"

(1) the usefulness and desirability of the product, (2) the availability of other and safer products to meet the same need, (3) the likelihood of injury and its probable seriousness, (4) the obviousness of the danger, (5) common knowledge and normal public expectation of danger (particularly for established products), (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and (7) *the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive.*

*Id.* at 345 n. 4, 363 A.2d 955, *quoting* Wade *Strict Liability of Manufacturers*, 19 Sw. L.J. 5, 17 (1965) (emphasis added); *Singleton v. International Harvester Co.*, 685 F.2d 112, 115 (4th Cir.1981); *Banks v. Iron*

**88**

*Hustler Corp.*, 59 Md.App. 408, 425–26 n. 3, 475 A.2d 1243 (1984) (noting that Professor Wade had somewhat revised his seven factors but not indicating clearly that Maryland courts will use the newly revised factors).

It is clear that whether Ryobi could have eliminated the alleged danger in the saw without impairing the usefulness of the saw or making it more expensive is relevant in assessing the merits of both the strict liability and breach of warranty claims. Accordingly, Ryobi's claim that undue prejudice would result due to the lack of relevance *vis a vis* these theories clearly is inaccurate.

Defendant further maintains any probative value in admitting the dual activation switch into evidence is substantially outweighed by unfair prejudice because the jury may lose sight of the real issues in the case and construe the evidence as an admission of negligence. *See Columbia & P.S.R.R. v. Hawthorne*, 144 U.S. 202, 207, 12 S.Ct. 591, 593, 36 L.Ed. 405 (1892). The assumption that the introduction of a saw with a dual activation switch indicates a belief on Ryobi's part that it caused Polansky's injury clearly is false. As recognized by Professor Wigmore:

> [I]njuries may be and are constantly caused by reason of the inevitable accident, and also by contributory negligence of the injured person. To improve the condition of the injury-causing object [or in this case, to introduce a new model absent the feature that allegedly caused the injury] is therefore to indicate a belief merely that it has been *capable of causing such an injury*, but indicates nothing more, and is equally consistent with a belief in injury by mere accident, or in contributory negligence, as well as by the owner's negligence. Mere capacity of a ... thing to cause an injury is not the fact that constitutes liability for an owner; it must be a capacity which could have been known to an owner using reasonable diligence and foresight, and a capacity to injure persons taking reasonable care in its use.

2 Wigmore, *Evidence* § 283, at 151 (3d ed. 1940) (emphasis in original).

The Court believes that it is likely that some amount of undue prejudice likely will result through the introduction of the dual activated switch saw as the jury may view the manufacture of a new saw as an admission of liability. Nevertheless, Ryobi will be able to mitigate any undue prejudice by demonstrating that no liability is admitted because it continues to market the saw that allegedly caused Polansky's injuries. This should be contrasted with the paragon subsequent remedial measure case where the defendant no longer acts like he did when the plaintiff was injured due to his alleged negligence.

Weighing the demonstrated probative value of admitting the evidence of the dual activated switch saw against the relatively smaller likelihood and quantity of undue prejudice resulting from its admission as compared to paragon subsequent remedial measure cases, the Court concludes that the evidence is not precluded by Fed.R. Evid. 403.

Accordingly, it is this 28th day of March, 1991, by the United States District Court for the District of Maryland,

ORDERED:

1. That plaintiffs' motion for reconsideration is GRANTED.