UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————————

No. 97-2132
(CA-94-1878-CCB)

———————————

Cynthia Bernice White,

                              Plaintiff - Appellant,

        versus

Toyota Motor Corporation,

                              Defendant - Appellee.


———————————

O R D E R

———————————


        The Court amends its opinion filed March 3, 1998, as follows:

        On page 1, section 7, line 3 -- counsel "H. Bruce Dewey"  is corrected to read "H. Bruce Dorsey."

                              For the Court - By Direction


                              /s/ Patricia S. Connor
                              ———————————————
                                       Clerk

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CYNTHIA BERNICE WHITE,
<u>Plaintiff-Appellant,</u>

v.                                                            No. 97-2132

TOYOTA MOTOR CORPORATION,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-94-1878-CCB)

Argued: January 26, 1998

Decided: March 3, 1998

Before LUTTIG, Circuit Judge, PHILLIPS, Senior Circuit Judge,
and MORGAN, United States District Judge for the Eastern District
of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Simon Lopatto, III, Washington, D.C., for Appel-
lant. Joel Allen Dewey, PIPER & MARBURY, L.L.P., Baltimore,
Maryland, for Appellee. **ON BRIEF:** H. Bruce Dorsey, PIPER &
MARBURY, L.L.P., Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Dr. Cynthia B. White appeals an order dismissing by summary judgment her diversity action against Toyota Motor Corporation (Toyota) in which she sought damages for personal injuries on claims of negligence, strict liability, and breach of warranty based on the defective design of a head restraint. We affirm.

I.

On October 10, 1990, White purchased a new 1991 Toyota Celica GT-S from a Toyota dealership in Prince George's County, Maryland. The following day, White was involved in a rear-end collision while stopped at a red light. Behind White (in the same lane) at the traffic light was a stopped 1988 Honda operated by one Joseph Hunt. As both were stationary, a 1983 Oldsmobile Cutlass driven by Charles Starks crashed into the 1988 Honda causing it to accelerate forward and collide with the rear of White's vehicle. At the point of impact, the 1988 Honda was moving at a speed of approximately ten miles per hour.

The collision totaled the 1988 Honda but caused only a minor dent on White's vehicle. The day following the accident, White experienced severe pain in her neck and back. Initially, she was treated with back and neck braces, medication injections, and rest. When this treatment proved unsatisfactory, White underwent both an electromyograph and a magnetic resonance imaging. These tests revealed herniation of three sets of cervical discs into the spinal canal, with two of the discs actually compressing the spinal cord. After being referred to Dr. Arthur Cole (a neurosurgeon), White underwent discopathy neurosurgery to relieve the herniation. A second surgery was performed five months later after White continued to suffer pain and the danger of permanent paralysis remained.

2

White filed suit in Maryland state court against Toyota and Charles Starks (the driver of the striking Oldsmobile). White's complaint alleged claims under Maryland law of breach of warranty, negligence, and strict liability, all based on a theory of defective design of the head restraint in her vehicle as the proximate cause of her injuries.

Following removal of the action on Toyota's motion, the district court established a scheduling order for the designation of experts pursuant to Rule 26(a)(2). After White failed to designate any expert witnesses by the appropriate deadline, she sought a revision of the court's scheduling order. Toyota did not oppose White's request and a revised scheduling order was established setting deadlines of July 30, 1995, and September 30, 1995, for designation and deposition respectively. On July 31 (a day late), White designated six damages experts. Despite the untimeliness of her filing, the district court allowed this designation. A month later, White attempted to designate a liability expert, an attempt opposed by Toyota. Initially, the court barred White from calling any experts not named in her July 31 disclosure. After White moved for reconsideration of this order, the district court allowed White to designate Anthony Sances and Donald Eisentraut as liability experts "subject to the defendant's right to depose these witnesses and have additional time to designate its own experts." A discovery cutoff date of August 15, 1996 was then set.

The deposition of Sances was initially scheduled for July 8, 1996. This deposition was postponed (without objection) until two days later. On July 2, 1996, White unilaterally canceled the deposition of Sances, citing Sances' desire to review the transcript and materials prepared by Eisentraut before the deposition. Toyota refused to postpone this deposition and White filed a Motion for Protective Order seeking to postpone Sances' deposition. On July 8, the court set Sances' deposition for July 24 and, if a second day was necessary, August 1. Ultimately, White withdrew Sances as an expert witness and unilaterally canceled his deposition.

Following discovery, Toyota moved for summary judgment. On November 5, 1996, (a day after the summary judgment motion deadline set by the court had expired) White filed a Motion for Leave to File Motion for Summary Judgment and Supporting Papers Out of Time. Motion for leave was denied. In addition, the court sua sponte

3

agreed to hear Toyota's motion for summary judgment before White's deposition of Toyota's liability experts.

In opposition to summary judgment, White submitted the affidavits and deposition testimony of two experts. Donald Eisentraut, an engineer, opined that the Toyota head-restraint's design was defective in that it created a risk of a forced flexion type injury. Dr. Cole (White's treating physician) stated unequivocally, however, that White's injuries "occurred during the extension component of a flexion/extension injury." Cole based his opinion on the lack of "injury to the anterior portion of the vertebral bodies," a condition ordinarily associated with hyper-flexion injury.

On June 19, 1997, the district court granted summary judgment in favor of Toyota on all counts, concluding that White had failed to present a forecast of evidence sufficient to support a finding that the allegedly defective head restraint was the cause of any of White's alleged injuries. This appeal followed.

II.

White challenges the grant of summary judgment in favor of Toyota and the court's discretionary decision to reserve the depositions of Toyota's liability experts until after the court ruled on Toyota's motion for summary judgment. We take these in turn.

A.

We review the district court's grant of summary judgment in favor of Toyota de novo, construing the summary judgment materials in the light most favorable to White. See Cavallo v. Star Enterprise, 100 F.3d 1150, 1153 (4th Cir. 1996).

Under Maryland law (the relevant substantive law in this diversity action), a product liability action based on negligence or strict liability requires White to prove, at a minimum, that there was (1) a defect, (2) at the time the product left Toyota's control, and (3) that the defect was the actual and proximate cause of White's injuries. See Jensen v. American Motors Corp., Inc., 437 A.2d 242, 247 (Md. App.

4

1981). Toyota's motion and the district court's decision were based solely upon failure of the evidence as forecast to raise a triable issue of causation, specifically of cause-in-fact.

In resisting Toyota's motion challenging her ability to prove the requisite causation, White relied upon the opinions of her two designated experts. One, Donald Eisentraut, an engineer, opined that the Toyota head-restraint's design was defective in that it had a gap between the bottom of the restraint and the top of the seat to which it was attached by support columns. This gap he testified, created a risk of a "flexion type" injury which results when the head and shoulders are supported from the force of a rear-end collision, but the neck is not. The gap's existence allows the neck to bend backward toward the void between the supported portions of the shoulder and head as the chin moves downward toward the chest. The resulting flexion type injury is distinguished from an extension-type injury which occurs when the unsupported head moves rearward, causing the chin to move upward away from the chest.

Eisentraut's opinion thus laid the basis for proving the requisite causation by evidence that White in fact sustained such a flexion-type injury from the accident. But, Dr. Cole, White's attending physician, instead opined unequivocally that White's injuries"occurred during the extension component of a flexion/extension injury." Cole based his opinion on his direct diagnosis that there was no "injury to the anterior portion of the vertebral bodies" which is the condition ordinarily associated with hyper-flexion injury. JA 355-56.

Faced with these two expert opinions, the district court concluded that "[n]either expert's testimony alone is sufficient to support a jury verdict for Dr. White . . . and considered together their opinions do not support a consistent theory of recovery." JA 799. The logic of this assessment is impeccable. That the design may have been defective in creating a particular risk would not, standing alone, prove the necessary causation. Nor would the fact alone that White suffered a particular kind of injury. And, neither would the facts in combination that the design created the risk of one kind of injury and the claimant suffered another kind.

Nothing else appearing, therefore, we could find no error in the district court's conclusion that White's forecast of evidence failed to

5

raise a triable issue on the essential causation element of her claims. White suggests that there are two legal errors in the district court's assessment of the causation issue that taint the conclusion. Neither has merit.

The first, as we understand it, is that the court erred in requiring exact proof of just how and when the injury occurred. That was impossible, says White, given the fact that it occurred during "a 400-600 millisecond preventable or containable event." Appellant's Br. at 38. In support of the proposition that no such exactitude of proof was required, White relies on Blaw-Knox Construction Equipment v. Morris, 596 A.2d 679 (Md. App. 1991), specifically on the Maryland court's observation that once it was proven that an accident would not have occurred but for a product defect, it was irrelevant just how the claimant came to be in harm's way. Id. at 684.

But, here the district court did not find proof lacking on just how or when the injuries occurred within the short elapsed time of the actual event. Instead, it found proof lacking on the very fact found dispositive of the causation issue in Blaw-Knox: that, however the injury occurred, it would not have occurred but for the design defect.

The other error suggested by White invokes the Maryland rule that in "enhanced-injury" or "second-collision" cases, once a claimant has proved "a modicum of enhanced injuries" by reason of a manufacturer's design defect "the burden should shift to the defendants to apportion damages inter se." See Valk Manufacturing Co. v. Rangaswamy, 537 A.2d 622, 632 (Md. App. 1988). But, neither is that rule apposite here. Aside from the fact that only the manufacturer remained in the action at trial, the very proof found lacking here was as to any enhanced injuries caused in fact by design defect. Hence, under the Maryland rule, there would have been no shifting of the burden to apportion damages even had the other alleged tort-feasor remained in the case.

B.

White also argues that the district court abused its discretion in considering and deciding Toyota's motion for summary judgment without providing White with an opportunity to depose Toyota's own

6

liability experts. We disagree. The district court's decision to consider and rule on Toyota's motion for summary judgment as it did was well within the court's broad authority to control its own docket. <u>See Hinkle v. City of Clarksburg</u>, 81 F.3d 416, 426 (4th Cir. 1996) (noting that "[d]istrict courts enjoy nearly unfettered discretion to control the timing and scope of discovery"). In light of the consistent and disruptive delays caused by White's failure to designate experts and her inability to meet reasonable discovery deadlines, the district court acted reasonably and in the interests of economy and justice in considering Toyota's motion prior to allowing deposition of Toyota's liability experts.

White's argument that this deposition testimony would have provided evidence in support of her causation theory fails to comprehend the nature of her <u>prima facie</u> burden. It was up to her, not Toyota, to establish her <u>prima facie</u> case. While it surely would have been error to rely on expert testimony provided by Toyota without allowing White an opportunity to depose, that did not occur here. Nor did the court unfairly limit White's ability to discover, through deposition and interrogatory, facts peculiarly in the possession of Toyota.

<u>AFFIRMED</u>

7